# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW MEXICO

DANIEL & MAX, LLC,

    Plaintiff,

v.                                                             Civ. No. 19-173 GJF/GBW

BAB HOLDING COMPANY, LLC,

    Defendant,

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Plaintiff's Motion for Attorney's Fees and Costs [ECF 25] ("Motion"). The Motion is fully briefed. *See* ECFs 26-28. After careful consideration of the pertinent law and the briefing, the Court will **GRANT** the Motion and award Plaintiff fees and costs in the amount of $23,134.67.

    **I.   BACKGROUND**

On July 3, 2019, the Court granted Plaintiff summary judgment on its breach of contract claim against Defendant. *See* Mem. Op. and Order, ECF 23. The Settlement Agreement at the center of this lawsuit expressly contemplated the award of attorney's fees and costs to the prevailing party in any litigation arising out that agreement. *Id.* 1 n.1 (citing Compl., ECF 1, Ex. A ¶ 16). Consequently, in addition to awarding summary judgment to Plaintiff, the Court also ordered Plaintiff to file a separate "motion pursuant to Federal Rule of Civil Procedure 54(d)(2)." *Id.* ECF 23 n.1. Plaintiff complied by filing the instant Motion, in which it seeks attorney's fees ($22,734.67, including gross receipts tax) and costs ($400.00) in the combined amount of $23,134.67.

## II.    APPLICABLE LAW

As held by this Court in its Memorandum Opinion and Order, "Florida law governs the Agreement," a proposition with which neither party disagrees.  ECF 23 at 5; *see also* Compl. Ex. A ¶ 14 (Choice of Law and Venue Provision); *see generally,* Resp. Mot. Summ. J.; Resp. Mot. Att'ys Fees.

Florida courts employ the federal lodestar method in determining reasonable attorney's fees.  *Fla. Patient's Comp. Fund v. Rowe*, 472 So. 2d 1145, 1150 n.5 (Fla. 1985) ("These factors are essentially the same as those considered by the federal courts in setting reasonable attorneys' fees.").  Once a "contract triggers a court-awarded fee, the trial court is constrained by *Rowe* and its progeny in setting a fee that must be reasonable." *First Baptist Church of Cape Coral, Florida, Inc. v. Compass Construction, Inc.*, 115 So. 3d 978, 980–985 (Fla. 2013)).

The lodestar method requires a court to multiply the number of hours reasonably expended on the litigation by a reasonable hourly rate for the services of the prevailing party's attorney.  *Rowe*, 472 So. 2d at 1150-1.  In addition, the product of that multiplication, otherwise known as the "lodestar figure," may be enhanced where necessary by an appropriate multiplier.  *Id.*  Courts must consider the following factors to arrive at the lodestar figure:

(1) The time and labor required, the novelty and difficulty of the question(s) involved, and the skill requisite to properly perform the legal service(s).

(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.

(3) The fee customarily charged in the locality for similar legal services.

(4) The amount involved and the results obtained.

(5) The time limitations imposed by the client or by the circumstances.

(6) The nature and length of the professional relationship with the client.

(7) The experience, reputation, and ability of the lawyer(s) performing the services.

(8) Whether the fee is fixed or contingent.

*Rowe*, 472 So. 2d at 1150; *see also* Rule 4-1.5(b), Florida Rules of Professional Conduct.

The movant bears the burden of establishing the reasonableness of both the amount of time expended and the "prevailing 'market rate,' i.e., the rate charged in that community by lawyers of reasonably comparable skill, experience and reputation, for similar services." *Rowe*, 472 So. 2d. at 1151. Therefore, "the attorney fee applicant should present records detailing the amount of work performed" and should "claim only those hours that he could properly bill to his client." *Id*. at 1150.

### III. ANALYSIS

Defendant concedes that the hourly *rates* charged by Plaintiff's counsel are reasonable and that Plaintiff is permitted to have $400 in costs taxed against Defendant. Resp., ECF 26, ¶¶ 2, 4. In addition to and independent of Defendant's concession, the Court finds that Plaintiff's counsel, Andrew Schultz and Paola Jaime Saenz, charged reasonable hourly rates. *See Puleo v. Morris*, 98 So. 3d 248, 249–50 (Fla. Dist. Ct. App. 2012) (citing *Pridgen v. Agoado*, 901 So.2d 961, 962 (Fla. Dist. Ct. App. 2005) ("Florida law requires a trial court to support an award of attorney's fees with specific findings as to a reasonable hourly rate and the hours reasonably expended litigating the issues."). Mr. Schultz bills $450.00 an hour while Ms. Jaime Saenz commands $190.00. Mr. Schultz attached an affidavit thoroughly detailing his career that, among other things, includes serving as law clerk to a U.S. Supreme Court Justice and over thirty years of complex federal litigation experience as a shareholder of a major New Mexico law firm. Aff. of Andrew G. Schultz, *passim*, Mot. Ex. C. In addition, Mr. Schultz explains why Ms. Jaime Saenz, an associate, charges significantly less per hour. *Id*. ¶¶ 17-19. Lastly, an affidavit by John Cooney, an Albuquerque-

based lawyer with more than fifty years of civil litigation experience, further establishes the reasonableness of Mr. Schultz's hourly rate. *See* Aff. of John R. Cooney, Mot. Ex. E.

In sum, based on the evidence, the Court finds that hourly rates of $450.00 and $190.00 are reasonable for attorneys with similar experience and skills as those possessed by Mr. Schultz and Ms. Jaime Saenz in this market area. *See Rowe*, 472 So. 2d. at 1150-1; *see also O Centro Espirita Beneficente Uniao Do Vegetal in U.S. v. Duke*, 343 F. Supp. 3d 1050 (D.N.M. 2018) (discussing market rates in New Mexico and awarding $350.00/hour).[1] Consequently, the Court will turn its focus to the only issue the parties dispute: whether the 62.7 hours expended by Plaintiff's counsel constitute a reasonable amount.

To support the assertion that these hours were reasonably expended, Mr. Schultz attached complete billing records as well as his own affidavit explaining his firm's billing practices. *See* Mot. Exs. C, D. Broken down by line item and in increments of tenths of an hour, the billing records include detailed explanations for the work done on a given date and time. *See id*. Ex. D. At Plaintiff's counsel's firm, the primary attorney assigned to the matter reviews these records monthly, making appropriate adjustments as necessary to enhance accuracy. *Id*. Ex. C ¶¶ 14-16.

The records demonstrate that Mr. Schultz began billing Plaintiff on January 9, 2019, when he undertook initial review of this matter. Ex. D at 1. From there, he began communicating with his client on potential strategies, conferred with a real estate specialist within his firm, conducted legal research, and began drafting the complaint. *Id*. at 1-6. The records further show, for example, that after filing the complaint, Mr. Schultz reviewed the answer, formulated litigation strategies, filed a motion for summary judgment (and a reply), communicated with opposing

---

[1] Furthermore, because this Court charges a mandatory $400.00 fee for docketing a complaint, Plaintiff is entitled to an award in that amount. *See* 28 U.S.C. § 1920(1) (Courts may "tax as costs . . . [f]ees of the clerk"); *see also* Fed. R. Civ. P. 54(d)(1); D.N.M.LR-Civ. 54.1.

counsel, authored a Joint Status Report, and attended a Rule 16 Scheduling conference. *Id*. at 6-12. For her part, after the Court awarded summary judgment, Ms. Jaime Saenz researched and wrote the instant Motion, which required a relatively deep dive into Florida law. *Id*. at 14-15.

Notwithstanding Plaintiff's counsel's records-based submission, Defendant asserts that the 62.7 hours are not reasonable "given the relatively few proceedings that have occurred in this case." *Id*. ¶ 3. Taking into account what it views as this litigation's short lifespan, the simplicity of the complaint and the attendant summary judgment briefing, the absence of any discovery, and the existence of zero court hearings and only two short court-ordered telephonic conferences, Defendant instead "submits that 40 hours is a reasonable number of hours to litigate this case." *Id*. ¶ 4. But Defendant cites no law, attaches no affidavits or other evidence, criticizes not a single individual entry in the billing records, and offers no hint of the formula it used to compute its apparently arbitrary recommendation that the Court cut the hours by more than 36%. In failing to do any of this, Defendant leaves the Court to fend for itself in deciding the rather sticky question of whether the hours claimed by Plaintiff's counsel were reasonably expended or instead were unreasonably padded by the litigation equivalent of churning the account, gilding the lily, or running up the score.

Based on the record before it, the Court has been given no legitimate reason to question the veracity or necessity of the hours claimed by Plaintiff's counsel. Occasioned by Plaintiff's need to protect its legal rights, this lawsuit originated only because of Defendant's inexcusable failure to honor its obligations under the Settlement Agreement. Then, instead of defaulting, confessing judgment, or stipulating to the Motion for Summary Judgment, Defendant instead chose to litigate this case in a manner that caused Plaintiff's counsel to put in the hours necessary to secure the relief to which Plaintiff was plainly entitled. And to top it off, Defendant's decision

5

not to stipulate to an award of reasonable fees and costs caused Plaintiff's counsel to charge their client *an additional 26 hours* to litigate the instant motion. Whatever strategic considerations that counseled Defendant to adopt its course of action appear in hindsight to be misguided, wrong-footed, and expensive.

Furthermore, contrary to Defendant's implication, Plaintiff's counsel didn't take every opportunity to unreasonably increase their fees. Indeed, on one occasion, Mr. Schultz reduced the bill by not charging for research on the default judgment process in federal court. *Id.* at 8. On another occasion, Mr. Schultz billed out 3.2 hours of work performed by Ms. Jaime Saenz not at her authorized rate of $190/hour but at the substantially reduced rate of $71/hour. *Id.* at 10. And it is noteworthy that Ms. Jaime Saenz pulled the laboring oar on the instant Motion, thereby ensuring that Plaintiff was billed for 22.8 hours of her time at $190/hour compared to only 3.2 hours of Mr. Schultz's more expensive time. *Id.* at 14-15.[2]

This Court finds that the billing records and Mr. Schultz's affidavit demonstrate that Plaintiff's counsel efficiently represented Plaintiff in preparation for and during this litigation, speedily secured their client full relief, and "claim[ed] only those hours that [they] could properly bill[.]" *Rowe*, 472 So. 2d. at 1150. Consequently, the Court finds that the hours expended in this case by Plaintiff's counsel were reasonable. Applying the lodestar method, the Court finds and concludes that Plaintiff should be awarded reasonable attorney's fees of $22,734.67 and $400.00 in costs.[3]

---

[2] Although Mr. Schultz's time is certainly not cheap, Defendant is still fortunate that its litigation adversary picked a law firm headquartered in Albuquerque and not in Denver, Dallas, or D.C.

[3] This amount represents the 36.7 hours charged by Mr. Schultz at a rate of $450 per hour (totaling $16,515.00), the 26.0 hours charged by Mr. Saenz at $190 per hour (totaling $4,560.00), and the gross receipts tax on these two amounts (i.e., 7.875 percent of $21,075.00, which amounts to $1,659.67).

## IV. CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Plaintiff's Motion is **GRANTED**. The Court will grant Plaintiff an award of attorney's fees ($22,734.67, including gross receipts tax) and costs ($400.00) for the combined amount of $23,134.67.

**SO ORDERED.**

_____
THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE
*Presiding by Consent*