IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

DANIEL & MAX LLC,

    Plaintiff,

v.                                                     Civ. No. 19-173 GJF/GBW

BAB HOLDING COMPANY, LCC,

    Defendant.

**ORDER CERTIFYING FACTS PURSUANT TO 28 U.S.C. § 636(e)(6)**

THIS MATTER comes before the undersigned on Plaintiff's Motion for Findings of Fact Sanctions for Contempt of Court Order. *Doc. 59*. Having reviewed the Motion and being fully advised in the premises, I GRANT it and CERTIFY the facts set forth herein.

**I.    BACKGROUND**

For almost a year and a half, Plaintiff has subpoenaed the deposition of, and documents from, Michael Dixson—the registered agent for Defendant (a single purpose entity that used to own a piece of commercial property at 525 S. Telshor Blvd, Las Cruces, NM 88011 (the "Property")) and a shareholder or employee of several corporations that invested in, or contracted with, Defendant. *See doc. 41-1* at 3 (first subpoena); *doc. 41-3* at 3-4 (second subpoena); *doc. 41-4* at 3-4 (third subpoena); *doc. 46-2* at 8:16-25, 31:24–33:20, 38:4-39:18, 60:4-11 (describing Mr. Dixson's relationships with

various entities related to Defendant).  Plaintiff seeks discovery from Mr. Dixson to collect a judgment of $164,475.00, *see doc. 24*, and a cost and fee award of $23,134.67, *see doc. 29* at 7, that the Court has entered against Defendant.

Rather than assisting Plaintiff in this endeavor, Mr. Dixson has repeatedly ignored Plaintiff's subpoenas, and, more recently, the Court's orders.  *See doc. 43* at 1 (ordering Mr. Dixson to appear at an evidentiary hearing); *doc. 51* at 1 (noting Mr. Dixson's absence at that hearing); *doc. 56* at 3-5 (ordering Mr. Dixson to appear at another evidentiary hearing, produce the Project's closeout file and other documents responsive to the subpoena by October 5, 2021, and appear for a deposition on October 12, 2021); *doc. 58* at 1-2 (recording Mr. Dixson's absence at that hearing, his failure to produce documents, and his non-appearance at the Court-ordered deposition).  So, on November 30, 2021, Plaintiff moved the Court to certify facts so that it may seek a contempt order from a judge with authority to hold Mr. Dixson in contempt for his noncompliance with the Court's subpoenas and other orders.  *See doc. 59*.

II.     **LEGAL STANDARDS**

Contempt authority is inherent to judicial power.  *Michaelson v. United States ex rel. Chicago, St. P., M. & O. Ry. Co.*, 266 U.S. 42, 65 (1924); *Ex parte Robinson*, 86 U.S. 505, 510 (1873).  Contempt may be civil, criminal, or both.  *Ager v. Jane C. Stormont Hosp. & Training Sch. for Nurses*, 622 F.2d 496, 499 (10th Cir. 1980).  The distinction between the two "turns on the character and purpose of the sanction."  *Dartez v. Peters*, 759 F. App'x

2

684, 689 (10th Cir. 2018) (unpublished) (internal quotation marks and citation omitted). Civil contempt is "remedial, and for the benefit of the complainant," while criminal contempt is "punitive, to vindicate the authority of the court." *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 827-28 (1994).

Magistrate judges, as Article I, rather than an Article III, judges have limited contempt authority. *See generally* 28 U.S.C. § 636(e). A magistrate judge presiding with consent of the parties under 28 U.S.C. § 636(c) "ha[s] the power to punish, by fine or imprisonment, or both, criminal contempt constituting disobedience or resistance to the magistrate judge's lawful writ, process, order, rule, decree, or command." *Id.* § 636(e)(3). Proceedings for such criminal contempt follow Federal Rule of Criminal Procedure 42(a), *see id.*; Fed. R. Crim. P. 42(a), and punishment cannot exceed a $5,000 fine or thirty (30) days of imprisonment,[1] *see* 28 U.S.C. § 636(e)(5); 18 U.S.C. §§ 3571(b)(6), 3581(b)(8). A magistrate judge presiding under 28 U.S.C. § 636(c) "may [also] exercise the civil contempt authority of the district court." 28 U.S.C. § 636(e)(4).

By contrast, the undersigned, as a magistrate judge presiding under 28 U.S.C. § 636(b)(3),[2] only has the summary criminal contempt authority that every magistrate judge possesses to "punish summarily by fine or imprisonment, or both, such contempt

---

[1] To impose punishment exceeding thirty days of imprisonment or a $5,000 fine, a magistrate judge presiding pursuant to 28 U.S.C. § 636(c) must follow the certification process set forth in 28 U.S.C. § 636(e)(6).
[2] Post-judgment discovery is a matter that may be referred to a magistrate judge pursuant to 28 U.S.C. § 636(b)(3). *See F.D.I.C. v. LeGrand*, 43 F.3d 163, 167 (5th Cir. 1995).

of [his] authority … constituting misbehavior of any person in [his] presence so as to obstruct the administration of justice" by issuing a signed contempt order reciting the underlying facts and certifying their occurrence in his presence. *Id.* § 636(e)(2); *see also* Fed. R. Crim. P. 42(b). Thus, in the instant case, the undersigned lacks authority over civil contempt, non-summary criminal contempt, and summary criminal contempt punishable by penalties exceeding a $5,000 fine or thirty (30) days of imprisonment. *See* 28 U.S.C. § 636(e)(6)(B).

> In these latter contempt scenarios, the undersigned
>
> shall forthwith certify the facts to a district judge and may serve or cause to be served, upon [the purported contemnor], an order requiring such person to appear before a district judge upon a day certain to show cause why that person should not be adjudged in contempt by reason of the facts so certified.

*Id.* § 636(e)(6). "Under the certification process, the magistrate judge may conduct a hearing, but the magistrate judge functions only to certify the facts and not to issue an order of contempt." *E.E.O.C. v. Midwest Health, Inc.*, No. 12-MC-240-KHV-GLR, 2013 WL 1502075, at *1 (D. Kan. Apr. 11, 2013); *see also Bowens v. Atl. Maint. Corp.*, 546 F. Supp. 2d 55, 71 (E.D.N.Y. 2008) (gathering cases); *In re Kitterman*, 696 F. Supp. 1366, 1370 (D. Nev. 1988) (interpreting 28 U.S.C. § 636(e) to allow a magistrate judge to conduct a hearing on whether to certify a contempt issue to a district judge).

A certification of facts is distinct from a proposed findings and recommended disposition. *See Wallace v. Kmart Corp.*, 687 F.3d 86, 90-91 (3d Cir. 2012) (citing *Taberer v.*

4

*Armstrong World Indus., Inc.*, 954 F.2d 888, 903-04 (3d Cir. 1992)); *Proctor v. State Gov't of N.C.*, 830 F.2d 514, 517 (4th Cir. 1987) (finding review of facts certified pursuant to 28 U.S.C. § 636(e) is distinct from review of findings proposed and dispositions recommended pursuant to 28 U.S.C. § 636(b)). A certification of facts "serve[s] the function of a charging instrument or pleading for a trial to be held before the district judge," *Taberer*, 954 F.2d at 903: a showing that, after investigation, sufficient evidence exists to establish a prima facie case of contempt, *see Crazy ATV, Inc. v. Probst*, Case No. 1:13-cv-00114-RJS-DBP, 2015 WL 7281695, at *2 (D. Utah Oct. 16, 2015) (citing *Bowens*, 546 F. Supp. 2d at 71).

### III.  CERTIFICATION OF FACTS

Pursuant to 28 U.S.C. § 636(e)(6)(B), I FIND and CERTIFY the following facts to the Court:[3]

1. In March 2019, Plaintiff sued Defendant for breaching the settlement agreement arising from Defendant's failure to tender an improvements allowance under a lease agreement between the parties. *See generally doc. 1*.

---

[3] In certifying facts, I do not reach the following questions: (i) whether the Honorable Gregory J. Fouratt, who is presiding over this case with the consent of the parties pursuant to 28 U.S.C. § 636(c), has the statutory authority to adjudge the certified facts; (ii) whether the Honorable Gregory J. Fouratt has the statutory authority to hold in contempt a non-party who has not consented to him; or (iii) whether the Honorable Gregory J. Fouratt's exercise of such statutory authority (should it exist) is consistent with Article III of the Constitution.

2. On July 3, 2019, the Court entered judgment in favor of Plaintiff for $164,475.00. *See doc. 24*.

3. The following month, the Court awarded Plaintiff an additional $23,134.67 in attorneys' fees and costs. *See doc. 29*. Defendant thus owes Plaintiff over $187,600.

4. On May 18, 2020, Defendant's counsel moved to withdraw. *Doc. 35*.

5. On June 9, 2020, the Court held a hearing on the motion to withdraw. *See doc. 38*. Michael Dixson attended the hearing as Defendant's ownership representative. *See id.* At the hearing, the Court gave Defendant (through its ownership representative Mr. Dixson) three days for either a replacement counsel to enter an appearance or Defendant to provide a physical address at which Mr. Dixson may be served with a Rule 45 deposition subpoena in accordance with Plaintiff's efforts to collect judgment. *See id.* at 2.

6. On June 16, 2020, Defendant's counsel notified the Court via email (with courtesy copies to Plaintiff's counsel and Mr. Dixon) that Mr. Dixon had provided counsel with his personal address. *See doc. 40* at 2.

7. On June 17, 2020, the Court allowed Defendant's counsel to withdraw. *See id*.

8. On July 22, 2020, Plaintiff noticed Mr. Dixson's deposition for August 5, 2020, and mailed a notice of deposition and subpoena for deposition and documents to the address Mr. Dixson had provided. *See doc. 41-1*.

9. On July 29, 2020, Sienna Rubio, Mr. Dixson's assistant, contacted Plaintiff's counsel with a request that the deposition take place two weeks later due to a conflict with Mr. Dixson's schedule. *See doc. 41-*2 at 9-10. Pursuant to this request, Plaintiff rescheduled the deposition for August 18, 2020. *See id.* at 8-9; *doc. 41-3* at 1. Plaintiff served Mr. Dixson with an amended notice and subpoena through Ms. Rubio. *See doc. 41-2 at 5-7.*

10. In correspondence with Ms. Rubio, Plaintiff's counsel attempted to confirm whether Mr. Dixson would supplement previous document production before his deposition, advising that Mr. Dixson's discovery responses in October 2019 had indicated that additional documents would be produced. *See id.* at 3-4.

11. On August 10, 2020, Plaintiff clarified the documents it was subpoenaing from Mr. Dixson. *See id.* at 4. The following day, it served an amended notice for the deposition requesting that Mr. Dixson produce these documents by August 16, 2020. *See doc. 41-3 at 1-3.*

12. On August 12, 2020, Ms. Rubio requested an additional week for Mr. Dixson to produce the requested documents. *See doc. 41-2 at 2-3.* Plaintiff and Mr. Dixson (acting through Ms. Rubio) agreed to postpone Mr. Dixson's deposition until August 26, 2020, and document production until August 24, 2020. *See doc. 41-2 at 1-3.*

13. The following day, Plaintiff served an amended notice and subpoena for the documents and deposition. *See doc. 41-4*.

14. On August 24, 2020, Ms. Rubio responded to the subpoena for documents by providing only documentation about Defendant's finances at the time of the Court's July 2019 judgment and objecting to the production of documents that postdated that judgment. *See doc. 41-5*. The documents provided did not include the contents of the Property's closeout project file despite them falling within the subpoena's scope.

15. Though Plaintiff disagreed with Mr. Dixson's proposed limitation for document production, it agreed to move forward with the deposition. Despite this concession, on August 26, 2020, Ms. Rubio emailed counsel for Plaintiffs at 6:49 a.m. (less than three hours before the start of the deposition) with a request for a one-week extension so that Chantel Crews, Mr. Dixson's attorney, could familiarize herself with the case. *See doc. 41-6 at 1; doc. 41-7 at 3:12-16*.

16. In response to this request, Plaintiff's counsel requested that Ms. Crews contact him to discuss the need to defer the deposition. *See doc. 41-6 at 1; doc. 41-7 at 3:16-19*.

17. Plaintiff's counsel did not hear from Ms. Crews before the deposition. *See doc. 41-7 at 3:20-4:7*.

18. After waiting a half an hour for Mr. Dixson or his counsel to appear or file a motion of non-appearance, Plaintiff's counsel put on the record that Mr. Dixson had failed to appear for his subpoenaed deposition. *See id.* at 4:4-7.

19. Later that afternoon, Ms. Crews informed Plaintiff's counsel that she would be representing Mr. Dixson for purpose of the deposition.

20. On September 1, 2020, Ms. Crews provided dates for Mr. Dixson's availability for a deposition and pledged that he would comply with the subpoena for documents. *See doc. 41-8* at 1.

21. On September 23, 2020, Plaintiff moved the Court to order Mr. Dixson to show cause why he should not be held in contempt for his noncompliance with the subpoenas for documents and his deposition. *See doc. 41* ("Motion to Show Cause").

22. Mr. Dixson did not file a response to Plaintiff's Motion to Show Cause even though Plaintiff provided Ms. Crews with a copy of it the day after filing it. *See doc. 42-1*.

23. On October 20, 2020, Plaintiff filed a reply to its Motion. *See doc. 42*.

24. On October 23, 2020, Ms. Crews informed Plaintiff that Mr. Dixson was gathering documents responsive to the subpoena and would produce them later that afternoon. *See doc. 46-1* at 8.

25. Mr. Dixson did not produce the documents later that afternoon as promised. *See id.* at 6.

26. On November 16, 2020, Plaintiff re-noticed Mr. Dixson's deposition and re-subpoenaed the deposition and documents in an email to Ms. Crews. *See id.* at 5-6.

27. On November 19, 2020, Ms. Crews confirmed acceptance of service and that she had forwarded the notice and subpoena to Mr. Dixson. *See id.* at 5.

28. On December 10, 2020, and again on December 14, 2020, Ms. Crews informed Plaintiff that she no longer represented Mr. Dixson in this case. *See id.* at 1, 3. On December 14, 2020, Ms. Crews also confirmed that she had forwarded to Mr. Dixson all email correspondence between her and Plaintiff's counsel regarding the deposition and the subpoena of documents. *See id.* at 1.

29. On December 15, 2020, Mr. Dixson appeared for his deposition. *See doc. 46-2* at 4:1-3. After less than two hours, he terminated the deposition, agreeing to continue it on another date. *See id.* at 6:25-8:3.

30. Before this deposition, Mr. Dixson did not respond to the subpoena for documents despite confirming at his deposition that he controlled responsive documents. *See id.* at 13:16-14:18; 35:15-36:22; 44:15-46:1; 58:8-59:19.

31. During this deposition, Mr. Dixson pledged to supply the documents responsive to his subpoena, including the contents of the Property's closeout file. *See id.* at 63:24-64:3.

32. Mr. Dixson did not supply these documents and ignored Plaintiff's attempts to follow up on his agreement to produce them. *See doc. 46-3* at 1-2.

33. On May 19, 2021, I set a hearing on Plaintiff's Motion to Show Cause for July 7, 2021, and ordered Mr. Dixson to appear in person and for his former attorneys to appear as witnesses. *See doc. 43* at 1.

34. I directed the United States Marshals Service to serve a copy of this order on Mr. Dixson in person and the Clerk of the Court to serve a copy of this order on Mr. Dixson and his former counsel via certified mail. *See id.* at 2.

35. On May 20, 2021, a Deputy U.S. Marshal personally served Mr. Dixson with a copy of my order. *See doc. 49*.

36. On July 7, 2021, I held a hearing on Plaintiff's Motion to Show Cause. Mr. Dixson did not appear. *See doc. 51* at 1.

37. During the hearing, Ms. Crews testified that she had advised Mr. Dixson to comply with the subpoenas. *See id.* at 4.

38. The Court did not hold Mr. Dixson in contempt at the hearing. *See id.* Rather, I ordered Mr. Dixson to show by August 6, 2021, whether there was adequate excuse for his failure to comply with the subpoena such that the Court should

11

not hold him in contempt pursuant to Federal Rule of Civil Procedure 45(g). *See doc. 52* at 14 ("Order to Show Cause"). I also set an evidentiary hearing on the matter for August 18, 2021, and ordered Mr. Dixson to appear for a deposition on August 9, 2021, and produce the subpoenaed documents by August 2, 2021. *See id.* at 14-15.

39. On August 4, 2021, I vacated the August 18, 2021, hearing; the August 9, 2021, deposition; and the August 2, 2021, deadline for producing subpoenaed documents "[s]ince the United States Marshals Services ha[d] been unable to locate and serve Mr. Dixson" with a copy of my Order to Show Cause. *Doc. 53* at 1.

40. On August 9, 2021, Mr. Dixson responded to my Order to Show Cause, contending that he had complied with the subpoenas by producing the seller's final settlement statement for the Property. *See doc. 55* at ¶¶ 7-8.

41. On August 11, 2021, I found Mr. Dixson's contention "utterly mistaken," noting he had "testified under oath that he could and would email Plaintiff the [P]roperty's closeout file." *Doc. 56* at 2 ("Order Resetting Contempt Hearing").

42. On August 11, 2021, I also reset the evidentiary hearing on whether to hold Mr. Dixson in contempt pursuant to Federal Rule of Civil Procedure 45(g) for October 26, 2021. *See id.* at 4. I further ordered Mr. Dixson to appear for that

hearing in person, to appear for a deposition on October 12, 2021, and to produce documents responsive to the subpoena by October 5, 2021. *See id.* at 4-5.

43. On August 19, 2021, Plaintiff's counsel provided Mr. Dixson with a notice for the Court-ordered deposition. *See doc. 58* at 2; *doc. 60-2* at 1-2.

44. On August 23, 2021, a Deputy U.S. Marshal personally served Mr. Dixson with a copy of my Order Resetting Contempt Hearing. *See doc. 57*.

45. Mr. Dixson did not produce documents responsive to the subpoena by October 5, 2021, deadline or appear for his Court-ordered deposition on October 12, 2021. *See doc. 58* at 2; *doc. 60* at 4:10-14, 5:1-4.

46. On October 26, 2021, I held an evidentiary hearing on my Order to Show Cause. Mr. Dixson did not appear. *See doc. 58* at 1. At the hearing, I informed Plaintiff that, as a magistrate judge presiding under 28 U.S.C. § 636(b)(3), I did not have the authority to hold Mr. Dixson in contempt, and that if Plaintiff wished to proceed with contempt proceedings, it should file a motion for me to certify facts by November 30, 2021. *See id.* at 2-4.

47. On November 30, 2021, Plaintiff filed a Motion for Findings of Fact Sanctions for Contempt of Court Order. *See doc. 59*.

48. As of November 30, 2021, Mr. Dixson still had not complied with Plaintiff's subpoenas or my orders regarding the production of subpoenaed documents and his appearance at his subpoenaed deposition. *See doc. 59* at ¶ 43.

## IV.   CONCLUSION

Based on the facts certified above, Plaintiff's Motion for Findings of Fact Sanctions for Contempt of Court Order is GRANTED.  The facts detailed in paragraphs one (1) through forty-eight (48) above are CERTIFIED to the Court.  By separate order, the Court shall provide Mr. Dixson an opportunity to be heard on these facts, whether in writing or at a hearing.  *See Silva v. Coast to Coast. Fin. Sols., Inc.*, Civil Action No. 1:14-cv-02584-DDD-KMT, 2020 WL 9432701, at *3 (D. Colo. Feb. 10, 2020) (finding that a contempt hearing need not be held where no relevant facts are in dispute); 28 U.S.C. § 636(e)(6) (requiring the Court to "hear the evidence" as to the certified facts).

In addition to standard electronic service, the Clerk of Court is directed to deliver copies of this Order via first-class mail to Mr. Dixson at Michael Dixson, 5996 Ojo de Agua, El Paso, Texas 79912.  Similarly, as soon as possible, the United States Marshals Service shall personally serve Mr. Dixson with a copy of this Order.

**IT IS SO ORDERED AND CERTIFIED.**

_____
GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE